



FILED

SEP 4 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRANCO LEO TORRES, | Cause No. CV 18-95-BLG-SPW-TJC |
| Petitioner, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DEVON MCGEE; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Petitioner Franco Leo Torres'
application for writ of habeas corpus under 28 U.S.C. § 2254.  Torres is a state
prisoner proceeding pro se.  As explained more fully below, Mr. Torres' petition
should be denied because two of his claims are not cognizable in federal habeas,
and his third claim does not survive deferential review.

## I.     Motion to Appoint Counsel

Torres requested that counsel be appointed to represent him.  See, (Doc. 1 at
11.)  Counsel must be appointed "when the case is so complex that due process
violations will occur absent the presence of counsel," *Bonin v. Vasquez*, 999 F.2d
425, 428-29 (9th Cir. 1993) (discussing *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th
Cir. 1986) (per curiam)), or when an evidentiary hearing is required, Rule 8(c),

1

Rules Governing § 2254 Cases.  Counsel may be appointed at any stage of the proceedings if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  Under § 3006A, the Court must consider the likelihood of success on the merits, the complexity of the legal issues involved, and the petitioner's ability to articulate his claims pro se.  *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).  Torres' case is not so complex that his right to due process will be violated if counsel is not appointed.  The request for counsel will be denied.

## II.   Motion to Expedite

Mr. Torres filed a Motion to Expedite these proceedings.  As Mr. Torres' claims are all addressed herein, the motion will be denied as moot.

## III.   Background

Following a jury trial in Montana's Thirteenth Judicial District, Yellowstone County, Torres was found guilty of felony Partner Family Member Assault.  (Doc. 1 at 2-3.)  On February 17, 2015, Torres entered into a sentencing agreement with the state, pursuant to Mont. Code Ann. § 46-12-211(1)(b),[1] wherein he agreed to be sentenced as a Persistent Felony Offender (PFO) to five years with the Montana Department of Corrections (DOC) and a recommendation that he complete the Boot Camp program.  In exchange for his agreement, Torres agreed to waive his

---

[1] Under this section, the parties agree that a specific sentence is the appropriate disposition of the case.

2

right to appeal and the ability to challenge the validity of his prior convictions out

of Nevada.  See, *Id.* at 3; see also, *Torres v. State*, 2018 MT 79N, ¶ 3.[2]  That same

day, Torres was sentenced in accordance with the terms contemplated in the

sentencing agreement.  Torres did not file a direct appeal.  (Doc. 1 at 3, ¶ 6.)

### a. Postconviction Proceedings

On February 8, 2016, Torres filed a petition for postconviction relief.  Torres

argued that both his trial attorney, Casey Moore, and sentencing attorney, Fred

Snodgrass, provided ineffective assistance of counsel (IAC) in various ways.  He

also contended that the delay of time between the trial and sentencing violated his

right to due process.  The district court considered the merits of Torres' due

process claim and determined Torres failed to demonstrate prejudice; thus, the

record-based claim could not proceed in postconviction.[3]  The district court also

noted Torres sought to amend his original petition and include a claim challenging

---

[2] All state court briefing and orders are available at:
https://supremecourtdocket.mt.gov/ (accessed Sept. 3, 2019).

[3] See, *Torres v. State*, DV-16-0192, Amend. Or. at 2-3, (filed June 28, 2016).  This
district court order was attached as an exhibit to Torres' opening brief filed on
appeal from the denial of his postconviction petition.  See, *Torres v. State*, DA 16-
0693, Appellant's Br. (filed Feb. 6, 2017).  For purposes of clarity, the Clerk of
Court will be directed to file a copy of this Order into the record.
This Court may take notice of proceedings, orders, and filings in other courts,
including state courts, when directly related to the case.  *Tigueros v. Adams*, 658 F.
3d 983, 987 (9th Cir. 2011).

Montana's statutory scheme of initiating felony charges without a grand jury indictment or a determination of probable cause following a preliminary hearing. The court considered this claim and determined it lacked merit. *Id.* at 7-8. The district court ordered the State to respond to Torres' IAC-related claims. *Id.* at 6-7; 8.

Following consideration of the State's response, the district court entered an order noting it was required to determine if Torres had identified all facts supporting relief with evidence establishing the existence of those facts. *Torres v. State*, DV-16-0192, Or. Dismissing Pet., at 3, (filed Sept. 23, 2016) (citing MCA § 46-21-104(1)(c)).[4] The court found that while Torres provided several filings with exhibits attached, none tended to support his allegations. The documents provided by Torres, which included copies of text messages and an online report from the local newspaper, were not truly evidence, but rather were only connected to Torres' claims based upon conjecture and upon Torres' own conclusory allegations. *Id.* at 3. Because Torres failed to meet the statutory threshold for the court to consider the merits of his claims, Torres failed to present legally and factually sufficient claims and his petition was dismissed. *Id.* at 3-4.

---

[4] This district court order was also attached as an exhibit to Torres' opening brief filed on appeal from the denial of his postconviction petition. *Torres v. State*, DA 16-0693, Appellant's Br. (filed Feb. 6, 2017). For purposes of clarity, the Clerk of Court will also be directed to file a copy of this Order into the record.

### b. Postconviction Appellate Proceedings

Torres timely appealed the denial of his postconviction petition.  (Doc. 1 at 4, ⁋ 10).[5]  Torres' opening brief raised fourteen separate issues.  See generally, *Torres v. State*, DA 16-0693, Br. Appellant at 6-43 (filed Feb. 6, 2017).  Torres asked the Court to review his claims under the Plain Error Doctrine.[6]  *Id.* at 24-25.

In response, the State argued the only issue properly before the Court was whether or not the district court acted within its discretion when it dismissed Torres' petition for postconviction relief, as a matter of law, based upon Torres' failure to state a claim for relief.  The State asserted the district court acted properly.  See, *Torres v. State*, DA 16-0693, Br. Appellee, at 5- 12 (filed Oct. 5, 2017).

The Montana Supreme Court determined the district court correctly denied and dismissed Torres' petition.  See, *Torres v. State*, 2018 MT 79N.  Regarding Torres' assertion that the district court erroneously denied him a hearing on his

---

[5] See also, *Torres v. State*, DA 16-0693, Not. (filed Nov. 18, 2016).

[6] The Montana Supreme Court generally does not address issues raised for the first time on appeal.  Plain error review is an exception to this general rule.  To reverse a decision for plain error, the appellant must: (1) demonstrate that the claimed error implicates a fundamental right; and (2) firmly convince the Court that a failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.  See, *State v. Daniels*, 2011 MT 278, ¶32, 362 Mont. 426, 265 P. 3d 623.

IAC-related claims, the Court found Torres failed to demonstrate a hearing was necessary to develop non-record-based facts or to resolve genuine issues of material fact. *Id.* at ¶7. Additionally, the court noted a petitioner has a heavy burden of establishing counsel was constitutionally ineffective by establishing both prongs of the *Strickland* test: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice to the petitioner. *Id.* at ¶9, citing *Strickland v. Washington*, 466 U.S. at 668, 687 (1984) (additional citations omitted). Whether viewing Torres' claims individually or cumulatively, the Court determined they "are essentially no more than assertions as to various actions or inactions by counsel coupled with unsupported assertions that the actions or inactions were deficient and prejudicial." *Id.* at ⁋ 11.

The Court thus held Torres failed to establish either prong of *Strickland*. The Court found Torres' claims were "completely devoid" of any showing that counsel's performance fell below an objective standard of reasonableness under the totality of the circumstances and in consideration of prevailing professional norms. *Id.* Moreover, the IAC claims lacked "any supported, non-speculative showing of a reasonably probability that the outcome would have been different had counsel performed as Torres asserts they should have." *Id.* The Court determined Torres failed to make an affirmative factual and legal showing sufficient to overcome the presumption that he received constitutionally effective

counsel.

Upon review of the record, the Court found Torres failed to show that the district court dismissed his petition based upon a clearly erroneous finding of material fact, an erroneous conclusion of law, or an abuse of discretion. *Id.* at ¶12. Thus, the lower court properly denied and dismissed Torres' postconviction petition.

### c. Lewis and Clark County PFMA proceedings

Prior to his 2015 Yellowstone County conviction, Torres pled guilty to and was sentenced for felony PFMA in 2008 in Lewis and Clark County.[7]

On August 14, 2017, Torres filed a petition for postconviction relief challenging the 2008 judgment. Torres alleged the state did not have the correct number of predicate offenses, because the Nevada domestic violence statue was not "similar" to the Montana PFMA statue for stacking purposes. See, *Torres v. State*, DA 18-0286, Appellant's Br. at 2-3 (filed Aug. 27, 2018). The district court held the Nevada statue was sufficiently similar to the Montana statute, and accordingly, the prior convictions under Nevada law qualified for purposes of stacking in Montana. *Id.* at 3. The state district court dismissed Torres' petition.

---

[7] See, Montana Correctional Offender Network: https://app.mt.gov/conweb/Offender/2154258 (reflecting conviction in Cause No. CDC 2008-21)(accessed May 30, 2019).

Torres appealed the decision, arguing the district court "abridged his due process rights" when it used the prior Nevada domestic violence convictions to charge his 2008 PFMA as a felony.  See, *Torres v. State*, 2019 MT 32N, Or. at 4 (Mont. filed Feb. 5, 2019).[8]  The Montana Supreme Court found Torres' claim lacked merit.  The Court also noted Torres' claim was untimely and found the untimeliness was not excused by newly discovered evidence.

> Torres has not presented newly discovered evidence showing he did not assault M.R.  Rather, his argument on appeal is that his prior Nevada convictions were improperly stacked.  Even if Torres' Nevada convictions were unlawfully stacked for Montana sentencing purposes, it would not prove his innocence of the assault of M.R., a condition for the [newly discovered evidence] exception to apply.  Further, assuming Torres presented evidence demonstrating his actual innocence of felony PFMA, he has nevertheless been aware of the stacking issue for more than one year.  Torres acknowledged the stacking issue when he pleaded guilty in 2008 and presented this exact argument when he appealed to this Court in 2016.

*Id.* at 4-5.  The Court determined the district court properly denied Torres relief.  *Id.* at 6.

### III. Claims

In his pending petition, Torres advances three purported constitutional violations.  First, Torres alleges the state committed a due process violation and

---

[8] In a footnote, the Montana Supreme Court cited Mont. Code Ann. §45-5-206(3)(a)(iv) which provides a third or subsequent PFMA conviction constitutes a felony.  Additionally, the Court noted that determining the number of convictions includes a "conviction for a violation of a statute similar to this section in another state [.]" MCA Section 45-5-206(3)(b)(iii).  *Torres*, 2019 MT 32N, fn. 1.

reversible error when it "qualified two irrelevant out-of-state Nevada domestic violence convictions for stacking purposes to enhance the current conviction and sentence to a felony." (Doc. 1 at 4, ¶ 13(A)).  Because all parties simply accepted the information contained in Torres' charging documents that the out-of-state convictions qualified under Montana law as prior convictions, Torres asserts his underlying case was improperly tried as a felony.  *Id.*

Torres next claims his right to due process was violated during sentencing when the prosecution and district court allowed him to enter into a post-trial sentencing agreement, in which he waived his right to appeal. (Doc. 1 at 5, ¶ 13(B)).  Torres claims Montana law does not allow for such post-trial negotiations, and that he unsuccessfully attempted to withdraw from the agreement when he learned his case was incorrectly tried as a felony.  *Id.*

Finally, Torres argues he was denied effective assistance of counsel when both his trial and sentencing attorney failed to challenge the use of the prior Nevada convictions for stacking purposes. *Id.* at 7, ¶ 13(C).  Torres contends the Nevada statute is not similar to the Montana statute, and his attorneys failed to provide reasonable assistance when they neglected to challenge the use of these convictions for stacking purposes.  Torres maintains he suffered prejudice in the form of his enhanced felony sentence.  *Id.*

Torres asks this Court to permit him to withdraw from the sentencing

agreement and remand the matter to the state court for consideration of his due process claim. *Id.* at 9, ¶ 16.  Additionally, Torres requests this Court order his release from custody and relieve him of his obligation to register as a violent offender. *Id.*

## IV. Analysis

A petitioner may seek federal habeas relief from a state court conviction or sentence only if he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Matters relating solely to the interpretation and/or application of state law generally are not cognizable in federal habeas review.  See e.g., *Lewis v. Jeffers*, 497 U.S. 764, 780 (199)("federal habeas corpus relief does not lie for errors of state law"); *Christian v. Rhode*, 41 F. 3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."); *Hendricks v. Zenon*, 993 F. 2d 664, 674 (9th Cir. 1993) (as amended) (finding petitioner's claim was "exclusively concerned with state law and therefore not cognizable in a federal habeas); *Miller v. Vasquez*, 868 F. 2d 1116, 1118-19 (9th Cir. 1989) (holding the claim that an offense did not qualify as "serious felony" for purposes of state sentencing enhancement was not cognizable on federal habeas review).  Although Torres raises three separate

claims, each one hinges on his central contention that he was improperly charged and convicted of felony PFMA under Montana state law, due to the purported infirmity of his prior Nevada convictions.

### a. Claims 1 and 2- Due Process Violations

Whether the commission of a domestic violence offense in another state is similar enough to the Montana PFMA statute to qualify for stacking purposes is a matter of state law,[9] and not subject to review by this Court. "[O]nly noncompliance with *federal* law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (emphasis in original). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). This claim does not allege a basis upon which federal habeas relief may be granted.

Likewise, whether the parties may enter into a post-trial sentencing agreement is also a matter of state law. It appears that following his jury trial, Torres' sentencing attorney attempted to limit Torres' potential exposure as a persistent felony offender (PFO) on his Yellowstone County case by entering into a written agreement which called for the state to agree that a 5-year commitment to the Department of Corrections was the appropriate disposition of Torres' case. Under the PFO statute in effect at the time of Torres' conviction, 5 years was the

---

[9] See, fn. 8, *supra*.

11

mandatory minimum sentence that could be imposed, but a maximum sentence of up to 100 years in the state prison was possible. See, MCA § 46-18-502(1) (2015). Thus, the agreement fulfilled its purpose; the district court imposed the sentence recommended by the parties. On appeal, the Montana Supreme Court did not suggest any impropriety with the sentencing agreement. See, *Torres v. State*, 2018 MT 79N, ¶3.[10]

While Torres contends Montana law does not allow for post-trial sentencing agreements, he does not provide any support for this conclusion. Additionally, the Montana Supreme Court, at least tacitly, acknowledged the validity of the 2015 post-sentencing agreement. The Montana Supreme Court is the highest authority in the land – superior even to the United States Supreme Court – on the content and meaning of Montana law. *See, e.g.*, *Estelle*, 502 U.S. at 67-68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine

---

[10] The Court simply noted:

> Torres and the State subsequently entered into a written post-trial agreement pursuant to §46-12-211(1)(b), MCA, designating Torres a persistent felony offender (PFO) and committing him to a five-year placement in the Department of Corrections Boot Camp program. In return for the State's binding sentencing recommendation , Torres agreed to waive his rights to appeal and challenge the validity of prior criminal convictions as predicates for his felony PFMA conviction and PFO designation. The District Court ultimately sentenced Torres in accordance with the parties' agreement. Torres did not appeal.

state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."). It is not the role of this Court to reexamine the Montana Supreme Court's decisions relative to state law issues.

Further, Torres has no basis to challenge the validity of his post-trial sentencing agreement under federal law. Such agreements are accepted and analyzed under ordinary contract principles, in the same manner as plea agreements. See e.g., *Sternberg v. Sec., Dept. of Health & Human Services*, 299 F. 3d 1201, 1206 (10th Cir. 2002) (interpreting post-trial sentencing agreement in same manner as a plea agreement), *United States v. Ross*, 245 F. 3d 577, 582 (6th Cir. 2001) (analogizing sentencing agreements to plea agreements), *United States v. Stevens*, 66 F. 3d 431, 437 (2nd Cir. 1995) (explaining relevant inquiry for both sentencing and plea agreements); *United States v. Bradstreet*, 207 F. 3d 76, 80 (1st Cir. 2000) (analogizing sentencing agreements to plea agreements).

Moreover, Torres pled guilty to felony PFMA in the Lewis and Clark matter, and as the Montana Supreme Court noted, he appeared to be aware of the potential stacking issue as early as 2008. See, *Torres*, 2019 MT 32N, at 5. Torres' decision to subsequently forego appellate challenges in exchange for the relatively lenient 2015 sentence he received in Yellowstone County undercuts the credibility of his present claim that he was unaware of the issue when he waived his appellate rights.

13

Finally, Torres' attempt to reframe the stacking issue as two separate due process violations – the district court violated his right to due process by: (1) accepting the Nevada convictions for stacking purposes, and (2) allowing Torres to enter into the post-trial sentencing agreement – is unavailing. Torres cannot convert these state-law issues into matters of federal constitutional import simply by referencing a right to due process. See, *Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1997) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process") (citing *Melugin v. Hames*, 38 F. 3d 1478, 1482 (9th Cir. 1994).

Torres' due process claims are not cognizable in federal habeas; they should be denied and dismissed with prejudice.

### b. Claim 3- Ineffective Assistance of Counsel

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292

(2013). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citations omitted).

The clearly established federal law for ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-pronged framework of *Strickland*, the Sixth Amendment guarantee of the right to counsel in a criminal proceeding is violated if "counsel's performance was deficient," and "the deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficient performance, petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688; see also, *Yarborough v. Gentry*, 540 U.S. 1 (2003) (per curiam). To establish that counsel's deficient performance prejudiced the defense, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

15

In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Id.* at 689. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

This Court's review of the Montana Supreme Court's determination that Torres' counsel did not perform deficiently is "doubly" deferential, because *Strickland* requires state courts to give deference to choices made by counsel, and AEDPA, in turn, requires this Court to defer to the determinations of state courts. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

As set forth above, the state district court dismissed the IAC claims contained in Torres' PCR petition for failure to state a claim. The district court found Torres' failed to produce any evidence that would establish the existence of his allegations beyond a preponderance of the evidence:

> Torres has made several filings that include exhibits but none of them tend to support his allegations. Torres has not filed any hearing or trial transcripts that support his version of what occurred. Although he has filed copies of text messages, an online report from the Billings Gazette and other items, their only claim to relevance as "evidence" in this case is connected by conjecture and conclusory allegations. Thus, notwithstanding [Torres'] active and voluminous filings, he has not met the statutory threshold for the court to assess the merits of his

16

allegations.

*Torres*, DV-16-0192, Or. Dismissing Pet., at 3 (citing MCA §46-21-104(1)(c)).  In

affirming the district court's dismissal of Torres' IAC claims, the Montana

Supreme Court, agreed that Torres failed to meet his burden under *Strickland* of

establishing that counsel performed deficiently or that counsel's performance

resulted in actual prejudice to Torres.  *Torres*, 2018 MT 79N, at ¶¶9-11.

### i.     Deficient Performance

To the extent that Torres attempts to argue trial counsel, Casey Moore,

provided ineffective assistance of counsel by failing to challenge the use of the

prior Nevada convictions for stacking purposes, Torres did not present this precise

IAC claim to the state district court in his PCR petition.[11]  Torres did add a claim

against Moore regarding the Nevada convictions, and Moore's purported failure to

challenge the validity of the convictions in a pretrial motion, in his appeal from the

---

[11] See, e.g. (*Torres*, DV-16-0192, Or. Dismissing Pet., at 2-3)(summarizing Torres IAC claims against Moore as alleging he was ineffective for: advocating a lie at trial, filing a dilatory motion for chance of plea in violation of his duty of loyalty to Torres, divulging information about attacking the victim's character to the State, and not calling appropriate witnesses at trial); see also, (State's Resp. to PCR Petition, at 10-13)(addressing Torres' claims against Moore which do not include a claim regarding the Nevada convictions/stacking); see also, (Affidavit of Casey R. Moore which addresses all of the IAC claims advanced against him, but does not include a discussion of challenging the Nevada convictions).  The Clerk of Court will be directed to file the State's Response into this Court's record, which also contains as attachments the Affidavits of Moore and Snodgrass, and other pertinent exhibits.

dismissal of his PCR petition.  See, *Torres v. State*, DA 16-0693, Br. Appellant, at 43 (filed Feb. 6, 2017).   As set forth above, without addressing each individual IAC claim, the Montana Supreme Court determined, whether considering the claims individually or collectively, Torres' failed to meet his burden under *Strickland*.

In his present petition, Torres has provided no information to this Court that would lead to the inference that Moore provided ineffective assistance to Torres by failing to challenge the validity of the prior convictions, and correspondingly, that the state courts' ultimate denial of this *Strickland* claim was objectively unreasonable.  See e.g., *Williams v. Taylor*, 529 U.S. 362, 413 (2000); see also, *Richter*, 562 U.S. at 102 (explaining that a state court decision involves "an unreasonable application of clearly established Federal law" if "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.").

Torres previously pled guilty to a felony PFMA in Lewis and Clark County. Torres was originally charged with a misdemeanor in Yellowstone County, but it appears the charge was subsequently amended to a felony when the prosecution became aware of the prior Montana felony conviction.  Torres was then in the position of facing not only the new Yellowstone County charge, but also revocation of his Lewis and Clark sentence.  It appears from Moore's affidavit that

18

Torres was insistent upon going to trial; even a misdemeanor PFMA conviction in Yellowstone County would have resulted in a revocation of Torres' Lewis and Clark felony PFMA sentence.[12] Despite being offered relatively favorable plea proposals, Torres exercised his constitutional right to trial. Apparently, at one point, Moore was able to negotiate a resolution which would have resulted in the felony charge being amended to a misdemeanor, although the exact nature of the amended charge is unclear. Torres nonetheless elected to proceed to trial on a theory of justifiable use of force.[13] Of course, Torres was well within his rights to do so, but it does not follow that Moore's representation was deficient.

Accordingly, the Montana Supreme Court could have reasonably concluded that Torres failed to meet his burden of demonstrating Moore provided effective assistance. Or, put another way, Torres cannot establish that the Montana Supreme Court's determination that Moore provided effective assistance was unreasonable. See, *Richter*, 562 U.S. at 102.

Torres also faults Snodgrass for not challenging the Nevada convictions. But it appears that Snodgrass advised Torres of all of his options prior to sentencing, including bringing a potential IAC claims against Moore; filing a direct

---

[12] See, Aff. of Moore, p. 4 at ¶8, (Attached to State's Resp. as "Exhibit 3") ("Mr. Torre[s] was facing revocation of his underlying Felony PFMA irrespective of a conviction in the instant case given his violations of his probationary sentence.")
[13] *Id.*

appeal; challenging the prior convictions from Nevada; and challenging the Lewis and Clark county conviction.[14]  Torres elected not to challenge the out of state convictions, and to proceed with the certainty provided by a binding plea agreement so that he would be able to return to his family in the quickest manner.[15] The Waiver of Appeal and Acknowledgement of Sentencing Agreement form which Torres initialed and signed expressly acknowledged that in exchange for the binding sentencing agreement, he was waiving his right to challenge the validity of the Nevada convictions:

> In addition, Mr. Torres has brought to the undersigned the issue of the prior validity of his Nevada sentences for purposes of enhancement of sentencing in this case.  Specifically, that those sentences do not appear as convictions on his PSI and are subject to being sealed under [Nevada] law.  By way of this Waiver, he waives his right to challenge those in this case because he believes the outcome of that argument is in doubt and he believes, after much consideration, that waiving that argument and agreeing to a sentence with the State of Montana is in his and his family's best interests.

(See, Waiver at p. 2, Attached to Snodgrass Affidavit as "Exhibit 4".)

From the available records it appears Snodgrass was more than willing to advance a challenge to the prior convictions, but Torres chose to forego that option.  Much like Moore, Snodgrass was simply representing his client's wishes.

---

[14] See, Aff. of Snodgrass, p. 2 at ¶5, (Attached to State's Resp. as "Exhibit 4).
[15] Had Torres successfully completed the Bootcamp program, his custodial sentence would have ended with the completion of the program.  Unfortunately, he did not complete the program and was transferred to Montana State Prison.  See, "Request for Administrative Transfer" (Attached to States' Resp. as "Exhibit 8").

Torres has provided the Court with no information which would call Snodgrass's performance into questions. Thus, the Montana Supreme Court's finding of no constitutional error was not an unreasonable application of *Strickland.* Torres has failed to demonstrate that the Montana Supreme Court's determination that Snodgrass performed effectively was unreasonable. See, *Richter,* 562 U.S. at 102.

### ii.    Prejudice

Torres' inability to establish that either Moore or Snodgrass performed deficiently, defeats his *Strickland* claim. See, *Siripongs v. Calderon,* 133 F. 3d 732, 737 (9th Cir.), cert. denied, 525 U.S. 839 (1998) (federal habeas court considering an IAC claim need not address the prejudice prong of *Strickland* if petitioner cannot establish incompetence under the first prong). But even if this Court were to find that Torres had met his burden under the first prong, Torres cannot establish he suffered actual prejudice under *Strickland's* second prong.

Even if a challenge had been made to the Nevada convictions, Torres has not demonstrated that the result of his proceedings would have been different. As set forth above, the Lewis and Clark County district court determined that the Nevada convictions were sufficiently similar to Montana convictions to warrant stacking.[16] The Montana Supreme Court did not disturb the lower court's decision. *Torres v. State,* 2019 MT 32N, Or. (Mont. filed Feb. 5, 2019). Thus, even if Torres could

---

[16] See, *Torres v. State,* DA 18-0286, Appellant's Br. at 3 (filed Aug. 27, 2018).

overcome the deficient performance *Strickland* prong, he has not established the result of his proceedings would have been different had either trial counsel or sentencing counsel raised the stacking issue. The Montana Supreme Court could have reasonably concluded that Torres failed to meet his burden of demonstrating that he suffered prejudice from the failure to raise the stacking issue. Accordingly, under §2254(d), this Court is required to afford deference to the state court decision.

### V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A certificate of appealability (COA) should be issued as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because the due process claims as pled are not cognizable in federal habeas. Torres' IAC claim does not survive deferential review under §2254(d). There are no close questions or reasons

to encourage further proceedings.

Based on the foregoing, the Court enters the following:

## ORDER

1. Mr. Torres' request for appointed counsel (Doc. 1 at 11) is DENIED.

2. Mr. Torres' motion to expedite (Doc. 4) is DENIED as moot.

3. The Clerk of Court is directed to file a copy of the following two state district court orders into the record as attachments to this Order: *Torres v. State*, DV-16-0192, Amend. Or. (filed June 28, 2016), and, *Torres v. State*, DV-16-0192, Or. Dismissing Pet. (filed Sept. 23, 2016).

4. The Clerk of Court is also directed to file a copy of the State's Response to Torres' PCR Petition, and corresponding Exhibits, as an attachment to this Order: *Torres v. State*, DV-16-0192, State's Response (filed Aug. 22, 2015).

## RECOMMENDATION

1. Mr. Torres' Petition, (Doc. 1), should be DENIED; his due process claims are not cognizable in federal habeas and his IAC claim does not survive deferential review.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

/ / /
/ / /

23

## NOTICE OF RIGHT TO OBJECT TO
## FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF
## FAILURE TO OBJECT

Mr. Torres may object to this Findings and Recommendation within 14

days.[17] 28 U.S.C. § 636(b)(1).  Failure to timely file written objections may bar a

de novo determination by the district judge and/or waive the right to appeal.

Mr. Torres must immediately notify the Court of any change in his mailing

address by filing a "Notice of Change of Address."  Failure to do so may result in

dismissal of this action without notice to him.

DATED this 4th day of September, 2019.


/s/ Timothy J. Cavan
Timothy J. Cavan
United States Magistrate Judge

---

[17] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party
may or must act within a specified time after being served and service is made
under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise
expire under Rule 6(a)."  Therefore, since Torres is being served by mail, he is
entitled an additional three (3) days after the period would otherwise expire.